UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SULTAN ESTEBESOV, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    No. 2:26-cv-00331-JPH-MG |
| | ) |
| WARDEN CLAY COUNTY JUSTICE | ) |
| CENTER, | ) |
| *et al.*, | ) |
| Respondents. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Sultan Estebesov's petition for a writ of habeas corpus challenges the lawfulness of his continued detention by federal immigration authorities at the Clay County Justice Center. For the following reasons, Mr. Estebesov's petition is **denied**.

## I. Facts

Mr. Estebesov is a citizen and national of Kyrgyzstan. Dkt. 1 at 1 ¶ 1. In February 2023, he presented for inspection at a port of entry. Dkt. 9-1 at 1. Immigration officials deemed Mr. Estebesov inadmissible and initiated removal proceedings but did not keep him in detention. *Id.* at 1–4. Instead, they granted him parole through February 19, 2024. Dkt. 1-2 at 1.

Mr. Estebesov entered the United States, applied for asylum, and complied with the conditions of his parole. Dkt. 1 at 8 ¶ 35. When his parole expired in February 2024, his asylum and removal proceedings were still pending. *Id.* at 9 ¶ 36. He continued to comply with the conditions of his parole, including reporting to appointments with immigration officials. *Id.* The government's

1

treatment of Mr. Estebesov did not change after his parole expired, that is, he was not taken into custody or otherwise detained. *Id.* ¶¶ 35–36.

On February 2, 2026, immigration officials arrested Mr. Estebesov when he reported to a supervision appointment in Chicago. Dkt. 9-1 at 9–10. He has since been moved to the Clay County Jail in this District. Dkt. 1 at 9 ¶ 40. His asylum and removal proceedings remain ongoing. *Id.* ¶ 41.

On February 2, 2026, while detained in the Chicago area, Mr. Estebesov filed a petition for a writ of habeas corpus in the Northern District of Illinois. Dkt. 13-1. There, Mr. Estebesov argued:

(1) he was eligible for discretionary release under 8 U.S.C. § 1226(a) and the government had wrongly detained him under 8 U.S.C. § 1225(b);

(2) his detention under § 1225(b) without any individualized findings as to whether he was a flight risk or dangerous violated his Fifth Amendment due process rights; and

(3) subjecting him to indefinite detention under § 1225(b) without any possibility of judicial review was an unconstitutional suspension of the writ of habeas corpus. *Id.* at 18–24 ¶¶ 72–93.

On May 5, 2026, United States District Judge Mary Rowland of the Northern District of Illinois issued a ruling finding that Mr. Estebesov's detention was governed by § 1225(b). Dkt. 9-2 at 3–4. Judge Rowland's order explained that because immigration officials permitted Mr. Estebesov to enter the United States as a humanitarian parolee, the law treats him as though he never crossed the border and therefore affords him no due process rights beyond those

specified by statute. *Id.* at 6–7. Under this "entry fiction", "noncitizens 'who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are treated for due process purposes as if stopped at the border'". *Id.* at 4 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Accordingly, when Mr. Estebesov "was granted parole, it did not change his legal status." *Id.* So, when returned to the custody from which he was paroled, Mr. Estebesov was treated as an "arriving alien" subject to mandatory detention under § 1225(b). *Id.* at 4–5. Judge Rowland also rejected Mr. Estebesov's suspension clause argument. *Id.* at 7 n.3.

On May 8, 2026, Mr. Estebesov filed his petition in this Court, alleging

(1) his Fifth Amendment procedural and substantive due process rights were violated when Respondents detained him without a bond hearing or written notice related to his humanitarian parole; and

(2) Respondents violated the Administrative Procedures Act ("APA") and the *Accardi*[1] doctrine because they detained him without an individualized determination as to whether he was a flight risk or danger to the community, as required by the Immigration and Nationality Act ("INA"), and its implementing regulations.  Dkt. 1 at 10–12 ¶¶ 42–54 (citing by 8 C.F.R. § 212.5(e)(2)(i)).

---

[1] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that a due process violation may accrue in certain circumstances, where an administrative agency fails to follow its own rules, regulations, and policies guaranteeing such process).

## II. Abuse of the Writ

Because Mr. Estebesov filed the petition in this case within days of Judge Rowland's order denying his petition in the Northern District of Illinois, the Court ordered the parties to expand the record and address the question of whether this case should be dismissed as an abuse of the writ. Dkt. 11.[2] The parties have now fully briefed the issue, dkts. 12, 14.

"*Res judicata* does not apply to habeas corpus. . . . Its place is taken by the concept of abuse of the writ." *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996). The doctrine bars a successive § 2241 petition "unless the law [has] changed or new facts [have] come to light." *Arnaout v. Marberry*, 351 F. App'x 143, 144 (7th Cir. 2009) (unpublished). It also "prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding." *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). There is a "presumption against habeas adjudication . . . of claims defaulted in the first round of federal habeas." *Id.*

Mr. Estebesov argues that the claims he presents to this Court—including the due process claims—are distinct from the claims presented in the original petition. Dkt. 12 at 10. As he frames it:

> the present claim is grounded in a different basis: the liberty interest created by nearly three years of compliant parole, the "implicit promise" that parole "will be revoked only if [the parolee] fails to live

---

[2] Abuse of the writ is an affirmative defense, but a court may raise the doctrine *sua sponte* as a basis for dismissal, provided the parties are given an opportunity to be heard. *Arnaout*, 351 F. App'x at 144 ("Although abuse of the writ is an affirmative defense, . . . and the warden did not raise it in so many words, [plaintiff] was notified by the briefs of the possibility that the district court's decision could be sustained on appeal under an alternative theory.").

up to the parole conditions," and the Government's disregard of the regulation that governs the continued operation of parole.

*Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Viewing the issues as framed by Mr. Estebesov—that they are new claims that were not presented in his first habeas case—the abuse-of-the-writ inquiry boils down to whether the petition in this case presents claims that he *could and should have* presented in his first habeas case in the Northern District of Illinois. *See McCleskey*, 499 U.S. at 488–90. The Court's "power to excuse these types of defaulted claims derives from the court's equitable discretion." *Id.* at 490.

Mr. Estebesov argues that he did not abuse the writ by deliberately withholding a claim to gain a tactical advantage. Dkt. 12 at 8; *Sanders v. United States*, 373 U.S. at 1, 18 (1963). That appears true; whether Mr. Estebesov could or should have raised his parole-based claims in the original petition, he doesn't appear to gain an advantage from bringing them here.

The Respondents argue that each claim presented by Mr. Estebesov in this case could have been presented in his first habeas case. Dkt. 14 at 5–6. Respondents point out that Mr. Estebesov supports his APA and *Accardi* claims in this case with citations to decisions that existed before Judge Rowland issued her order on May 5, 2026.[3] Mr. Estebesov hasn't explained what prevented him from articulating these claims in his original petition and/or notifying the Court

---

[3] *See* dkt. 1 at 6–7 ¶¶ 24–28 (citing *Dieng v. Hermosillo*, No. 2:26-cv-00190-LK, 2026 WL 41187, at *6 (W.D. Wash. Feb. 13, 2026); *Sileiri Doe v. U.S. Dep't of Homeland Sec.*, No. 25-cv-12245-ADB, 2026 WL 880442, at *11–12 (D. Mass. Mar. 31, 2026); *Gomez v. Olsen*, No. 4:26-cv-00021-TWP-KMB, 2026 WL 413371, at *2–3 (S.D. Ind. Feb. 13, 2026); *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025)).

of supplemental authorities when those cases were decided. Additionally, although Mr. Estebesov argues that new facts "have come to light" and "ripened the regulatory and *Accardi* claims," dkt. 12 at 9, the documents that make up the evidentiary record all existed before Judge Rowland issued her decision. *See* dkt. 9-1.

In the end, district judges bear "the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits." *Sanders*, 373 U.S. at 18. The Court "clearly has the power—and, if the ends of justice demand, the duty—to reach the merits." *Id.* Although Mr. Estebesov could and arguably should have presented the claims presented in this case in his original petition, the interests of justice weigh in favor of resolving his parole-based claims on the merits. Therefore, the Court does not apply the abuse of the writ doctrine and instead considers the merits of Mr. Estebesov's claims that were not previously addressed by Judge Rowland.

### III. Merits Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Mr. Estebesov argues that his detention is unlawful because (1) the Respondents have not followed their own regulations for terminating his humanitarian parole, and (2) the Respondent's termination of Mr. Estebesov's parole violates his Fifth Amendment due process rights.

6

## A. Regulatory Claims

Mr. Estebesov argues that Respondents violated the INA and its implementing regulations and the APA by failing to have effectuated a removal order within a reasonable time and no authorized official having determined "that the public interest requires that [he] be continued in custody." Dkt. 10 at 4–5 (citing 8 C.F.R. § 212.5(e)). He argues that his detention is therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". *Id.* at 11. Respondents argue that the language Mr. Estebesov relies on from § 212.5(e)(2)(i) doesn't apply because no removal order has been entered against him. Dkt. 14 at 7. Instead, he is in removal proceedings, so 8 U.S.C. § 1225(b) applies and he is not entitled to release or a bond hearing. *Id.* at 3, 7.

Under the APA, a reviewing court may hold unlawful and set aside an "agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Likewise, the *Accardi* doctrine "teach[es] generally that federal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002) ("[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests.").

Humanitarian parole "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). Once parole has been terminated, "[a]ny further inspection or hearing shall be conducted under [8 U.S.C. § 1225 or § 1229a], or any order of

7

exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see* 8 C.F.R. § 212.5(e)(1) ("[T]he alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

Here, Mr. Estebesov's parole automatically terminated on February 19, 2024, when his one-year parole date expired, dkt. 13-1 at 35. Because his parole automatically expired, Mr. Estebesov was not entitled to notice from Respondents. *See* 8 C.F.R. § 212.5(e)(1).[4] Furthermore, he was not entitled to an individualized finding by an authorized official that the public interest requires his continued custody—that finding, or release if that finding is not made, is required only if an "exclusion, deportation, or removal *previously entered* . . . cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Here, there is no previously entered removal order against Mr. Estebesov and he is currently in removal proceedings governed by 8 U.S.C. § 1225(b), dkt. 9-2 at 3–5. *See Marc v. Olson*, 4:26-cv-00031-TWP-KMB, 2026 WL 498656, at *2 (S.D. Ind. Feb. 23, 2026) ("Thus, even if [petitioner] was granted humanitarian parole, it terminated automatically . . . and the regulations do not appear to require notice, individualized determination, or hearing.").

---

[4] Because Respondents were not required to provide written notice of parole revocation to Mr. Estebesov, the Court need not address the parties' arguments of whether that notice was sufficient. Dkt. 14 at 7; dkt. 15 at 7–8.

Mr. Estebesov argues that under § 212.5(e), Respondents were required to effectuate an order of removal within a reasonable time, regardless of whether an order of removal was previously entered. Dkt. 10 at 4. In other words, the termination of Mr. Estebesov's parole triggered Respondents' obligation to execute a removal order within a reasonable time and if not done, Respondents were obligated to release him again on parole, unless a designated official opined that the public interest required his continued custody. Dkt. 10 at 4. In support of this argument, Mr. Estebesov cites several district court decisions that have interpreted and applied § 212.5(e)(2)(i) like this. *Id.* at 5–6 (collecting cases). These decisions, however, are not binding precedent on this Court. And regardless, they do not reconcile this interpretation of § 212.5(e)(2)(i) with its plain text, which requires release or a public interest finding only when an "order of exclusion, deportation, or removal *previously entered*" cannot be executed in a reasonable time (emphasis added). Here, no order of exclusion, deportation, or removal was "previously entered", so § 212.5(e)(2)(i)'s requirement of release or a public interest finding does not apply.

Undeterred, Mr. Estebesov further argues that reading § 212.5(e)(2)(i) to mean that the release requirement does not apply where no order of exclusion, deportation, or removal was previously entered "turns the regulation upside down." Dkt. 15 at 6. Under Mr. Estebesov's interpretation, § 212.5(e)(2)(i) must provide noncitizens who are in removal proceedings with at least the same protection against lengthy detention as those who have already been ordered removed. Mr. Estebesov, however, does not support this argument with legal

9

authority and as previously noted, it's contrary to the plain meaning of the regulation's text.

Judicial interpretation of agency regulations "begins with the text", *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 204 (2011), and here, § 212.5(e)(2)(i) requires a public interest determination or release on parole only when a "previously entered" removal order cannot be executed within a reasonable time. Here, no removal order has been entered, so § 212.5(e)(2)(i) does not require Respondents to make a public interest determination or release Mr. Estebesov on parole. Mr. Estebesov is therefore not entitled to habeas relief on the theory that his detention is unlawful because Respondents did not follow 8 C.F.R. § 212.5(e)).

**B.    Due Process Claims**

In his first habeas petition, Mr. Estebesov asserted due-process violations, arguing that the government wrongly subjected him to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); that his detention was "not reasonably related to any legitimate immigration purpose;" and that the Fifth Amendment does not allow the government to "evade individualized custody review by misclassifying paroled, interior noncitizens as subject to mandatory detention." Dkt. 13-2 ¶¶ 81–88.

Judge Rowland rejected Mr. Estebesov's due process arguments, finding that under §§ 1225 and 1226, Mr. Estebesov had the legal status of an alien arriving at the border and therefore had "only those rights regarding admission that Congress has provided by statute." Dkt. 9-2 at 6 (quoting *Thuraissigiam,*

10

591 U.S. at 140). Because Judge Rowland determined that Mr. Estebesov was statutorily subject to mandatory detention, he had no substantive or procedural due process right to relief from his detention. *Id.*

Trying another route, Mr. Estebesov argues here that his due process claims are based on "the liberty interest created by nearly three years of compliant parole, the 'implicit promise' that parole 'will be revoked only if [the parolee] fails to live up to the parole conditions,' and the Government's disregard of the regulation that governs the continued operation of parole." Dkt. 12 at 10 (quoting *Morrissey*, 408 U.S. at 482).

But as already explained, Mr. Estebesov has no due process claim based on what he refers to as "the regulation that governs the continued operation of parole." *Id.* Instead, Mr. Estebesov's parole automatically expired, and the plain text of the regulation does not require a public interest determination or release on parole where no removal order was "previously entered".

Next, Mr. Estebesov's "implicit promise" argument is misplaced. In *Morrissey*, the Supreme Court considered "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." 408 U.S. at 472. In examining a parolee's liberty interest, the Court noted that a parolee relies "on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* at 482. Mr. Estebesov argues that the Fifth Amendment therefore prohibits revocation of his parole without due process because he complied with the conditions of parole.

11

But *Morrissey* deals with *criminal* parole which involves conditional release from prison at the *end* of a criminal sentence. The "implicit promise" is open-ended: The prisoner will remain free for the rest of the sentence unless he violates the operative conditions. Humanitarian parole in the immigration context, in contrast, is based on a statute that only authorizes *temporary* parole. 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in his discretion parole into the United States *temporarily* . . .") (emphasis added). Mr. Estebesov did not receive an implicit promise that he would remain on indefinite parole for as long as he followed the rules. Instead, he received an explicit promise that he would remain on parole for one year and after one year it expired.

Mr. Estebesov's argument that three years of compliant parole created a liberty interest suffers from the same flaw. Although Mr. Estebesov may have complied with the conditions of his parole for three years, he was only granted parole for one year. To the extent Mr. Estebesov argues that due process protection from immigration detention arose from his continued compliance with parole conditions after his term of parole expired, he has not offered any supporting legal authority.

In sum, Mr. Estebesov's status as a former parolee does not provide him with procedural or substantive due process protection against detention under § 1225(b)(2)(A). To the extent that Mr. Estebesov argues he has a broader, more fundamental liberty interest that merits constitutional protection against detention, such claim was rejected by Judge Rowland and the Court will not reconsider that decision here.

12

## IV. Conclusion

Mr. Estebesov's petition for a writ of habeas corpus is **denied**.

The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 7/16/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

13